IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:10-CT-3223-FL

| | | |
|---|---|---|
| JEREMY ANTHONY JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| DR. TERRY WALLACE, | ) | |
| DR. RICHARD BROADWELL, and | ) | |
| NURSE K. HULL, | ) | |
| | ) | |
| Defendants. | ) | |

The matter comes before the court on the motion for summary judgment (DE 65) pursuant to Federal Rule of Civil Procedure 56 filed by defendant Dr. Richard O. Broadwell, III ("Broadwell"), to which plaintiff responded. In this posture, the issues raised are ripe for adjudication. For the following reasons, the court grants Broadwell's motion for summary judgment.

**STATEMENT OF THE CASE**

On December 30, 2010, plaintiff brought this action pursuant to 42 U.S.C. § 1983, against Broadwell, as well as Terry Wallace DDS ("Wallace"), alleging that they acted with deliberate indifference to his medical and dental needs in violation of the Eighth Amendment to the United States Constitution. Specifically, plaintiff alleged the following:

> [He] has requested the specialized medical care outside of the prison.
> Due to his permanent disability and the hole in his palate will not
> stop food from going into the nasal septum. Upon asking Dr. Richard

1

> O. Broadwell, III, and Dr. Wallace the Dentist who are private physician under contract to provide medical care to Pamlico Correctional Institution inmates that is needed. However, I am being refused this medical treatment and with the food going into my nasal septum is very painful the food decays and then there hole becomes infected and I cannot get any medications to stop the pain or infection. I need help !!!

Compl. p. 4.

As relief, plaintiff requested an injunction ordering defendants to "immediately arrange for the plaintiff's medical care[,] physical therapy, or follow up medical treatment to be evaluated by a medical practitioner with expertise in the treatment and restoration of palate and carry out without delay the treatment directed by such medical practitioner." Compl. p. 5. Plaintiff also requested compensatory and punitive damages.

Wallace subsequently filed a motion for summary judgment, arguing that plaintiff is not able to demonstrate that he violated his constitutional rights. On December 14, 2011, Broadwell filed a motion to dismiss, raising the affirmative defense of qualified immunity. The matters were fully briefed.

On August 22, 2012, the court entered an order granting Wallace's motion for summary judgment, but denying Broadwell's motion to dismiss. Then, on February 21, 2013, Broadwell filed a motion for summary judgment, to which plaintiff responded, arguing that plaintiff is unable to establish a constitutional violation. Alternatively, Broadwell asserted the affirmative defense of qualified immunity. Plaintiff subsequently moved to amend his complaint to include Nurse K. Hull ("Hull") as a defendant in this action, which this court granted.[1]

---

[1] Hull has until August 31, 2013, to respond to plaintiff's complaint.

2

On May 8, 2013, the court entered an order directing Broadwell to supplement the record, while holding his motion for summary judgment in abeyance. Broadwell complied with this court's order to supplement, and plaintiff responded.

## STATEMENT OF FACTS

On June 24, 2007, plaintiff sustained a self-inflicted gunshot wound that resulted in multiple facial fractures and other injuries. Wallace Aff. ¶ 5. More specifically, plaintiff's right lateral orbital wall was obliterated, he sustained a fracture to the right zygomatic, a maxillary fracture, and a fracture of the right paranasal sinus. Id. Plaintiff subsequently had several surgeries at Pitt County Memorial Hospital. Id. While at Pitt County Hospital, plaintiff's physicians recommended that an obturator device[2] be placed in plaintiff's mouth, and such a device was given to plaintiff from another provider. Id. ¶ 6.

In 2008, plaintiff had a tooth extracted and a molding made so that he could be fitted for dentures and a palatal obturator. Broadwell Aff. ¶ 6 and Ex. C. Both devices were created and initially fitted on May 19, 2008. Id. Adjustments were made to the devices on May 20 and 28, 2008. Id.

On January 21, 2010, plaintiff was transferred from Johnston Correctional Institution to Pamlico Correctional Institution ("Pamlico"). Id. ¶ 7 and Ex. D. Upon arriving at Pamlico nurse L. Clark ("Clark") examined plaintiff and reported that plaintiff was receiving treatment for hypertension and gastroesophageal reflux disease ("GERD").[3] Id. During the examination, plaintiff

---

[2] An obturator device is a prosthetic device that occludes an opening in the palate. Wallace Aff. ¶ 6.

[3] North Carolina Department of Public Safety policy provides that an inmate seeking an appointment in the medical or dental clinic first must submit a sick call appointment request

3

complained of a painful tooth.  Id.  Plaintiff also reported that he wore dentures and received a special mechanical soft diet, as well as a medical nutrition therapy diet ("MNT2").[4]  Id.

On February 3, 2010, plaintiff submitted a sick call appointment request, complaining that a tooth on the back lower left side of his mouth needed either to be removed or filled.  Broadwell Aff. ¶ 11 and Ex. H.  Plaintiff reported that there was a large hole in the side of his tooth and that it was causing constant pain.  Id.  In response, a nurse examined plaintiff on February 8, 2010.  Id.  The nurse then referred plaintiff to the dental clinic, where he was seen on February 23, 2010.  Id.  From this date through January 25, 2011, plaintiff saw Wallace, a dentist, for dental treatment on a regular basis.  This treatment is set forth in detail in the court's August 22, 2012, order granting Wallace's motion for summary judgment.  Plaintiff did not attend any medical appointments with Broadwell during this time period.  See id. ¶ 5.

On January 25, 2011, plaintiff attended his final appointment with Wallace in the dental clinic.  Id. ¶ 32 and Ex. BB.  Wallace noted that plaintiff still was having trouble with his full upper retaining (staying in place).  Id.  Wallace further noted that plaintiff had used Sea-Bond and denture adhesive, but acknowledged that plaintiff would need other assistance for further treatment options.  Id.

---

detailing his complaints.  Broadwell Supp. Aff. ¶ 7.  A triage nurse then reviews the inmate's complaint and schedules a sick call appointment with a nurse.  Id.  At the sick call appointment, the nurse assesses the inmate and records his complaints, as well as the nurse's observations, assessment and plan.  Id.  The nurse also assesses whether the inmate's complaints are medical issues, dental issues, or both.  Id.  If the inmate's complaints are medical issues, the nurse determines whether he/she can address the inmate's complaints without intervention by another medical heath care provider.  Id.  If the nurse determines that a referral for an evaluation is necessary, the nurse schedules the inmate to be seen by the medical healthcare provider.  Id.

[4] A MNT2 diet limits the number of an inmate's calories as part of a weight control plan.  Broadwell Aff. ¶ 7.  The diet subsequently was discontinued at plaintiff's request.  Id.

4

From January 26, 2011, through August 28, 2011, plaintiff submitted five sick call appointment requests. Broadwell Supp. Aff. ¶ 10. The five sick call appointment requests involved non-dental medical issues. Id. and Exs. 4, 5. The only sick call request, of the five, which involved Broadwell occurred on June 10, 2011. Id. On June 10, 2011, plaintiff complained of a skin rash, itching, and wrist pain. Id. Plaintiff sought a renewal of all of his medications and an eye exam. Id. The nurse provided plaintiff with medications to address his skin rash and joint pain. Id. The nurse then called Broadwell in connection with plaintiff's request that his medications be re-filled and that he be referred for an eye exam. Id. Broadwell ordered that plaintiff's medications be renewed and that he be provided an eye exam. Id.

On August 28, 2011, plaintiff was transferred from Pamlico to Piedmont Correctional Center ("Piedmont"). Id. Plaintiff was housed at Piedmont from August 28, 2011, through September 14, 2011. Id. ¶ 12 and Ex. 6. Plaintiff submitted two sick call requests while at Piedmont, however, neither request dealt with plaintiff's palate condition. Id. Plaintiff was transferred from Piedmont back to Pamlico on September 14, 2011. Id. ¶ 13.

Subsequent to his transfer back to Pamlico, plaintiff submitted his first sick-call request on November 30, 2011, in which he complained that he needed his mouth fixed because food was entering a hole in the roof of his mouth. Id. ¶ 14 and Ex. 7. Plaintiff explained that Wallace provided a "paper"[5] to the court indicating that he was unable to fix plaintiff's palate and that plaintiff would need to be seen by a specialist. Id. Plaintiff also requested that his Zantac prescription be renewed and that he receive an extra pillow. Id. Upon examination, the nurse noted

---

[5] Broadwell states that, upon information and belief, the "paper" to which plaintiff refers is the affidavit Wallace filed in this action (DE 23).

5

that plaintiff did not voice any medical complaints. Id. Plaintiff asked the nurse about his "future appointment" with a specialist for his palate condition. Id. The nurse informed plaintiff that he would be referred to his primary care physician, but plaintiff was not referred to Broadwell. Id. On November 30, 2011, Broadwell, at the nurse's request, ordered that plaintiff receive Zantac 300 mg. Id.

On December 7, 2011, Broadwell conducted a routine chart review and noted that plaintiff's hydrochlorothiazide ("HCTZ") prescription was about to expire. Id. ¶ 15. In response, plaintiff wrote an order that renewed plaintiff's HCTZ 12.5 mg prescription for six months. Id. On December 8, 2011, Broadwell entered an order that plaintiff's blood pressure be checked every month for six months. Id.

On December 15, 2011, plaintiff was seen by nurse Hull in response to a December 7, 2011, sick-call request in which plaintiff complained that his ulcer medication was running out, that his ulcer medication was not as effective as it used to be, that the top of his mouth was in pain, and that he needed to see a specialist. Id. ¶ 16 and Exs. 7, 8. Plaintiff informed Hull that a nurse had advised him that a doctor would see him that week, but that he had not seen a doctor. Id.

Hull examined plaintiff and noted that plaintiff complained that food caused his palate to become irritated and bleed. Id. During the examination, plaintiff told Hull that the dental clinic advised plaintiff that his condition would need to be referred back to the camp physician for further evaluation and treatment. Id. After examining plaintiff, Hull referred plaintiff to the camp physician for pain evaluation and consideration of his Zantac refill request. Id. Hull further instructed plaintiff to bring the pertinent dental information to the medical clinic to allow the camp physician to review it. Id. No appointment was scheduled for plaintiff to be seen in the medical clinic. Id. That same

6

day, pursuant to a nurse's request, Broadwell increased plaintiff's Zantac prescription and ordered an extra pillow. Id.

On January 4, 2012, Hull saw plaintiff in response to two sick call requests submitted on December 14, 2011, and December 25, 2011, in which plaintiff complained that his Zantac was ineffective, requested an extra pillow, and complained that he had not seen the dentist or doctor about his mouth. Id. ¶ 17 and Ex. 9. During his examination of plaintiff, Hull noted that the camp physician had already increased his Zantac dose and ordered an extra pillow. Id. Hull assessed plaintiff with an alteration in comfort related to GERD, and referred plaintiff to the camp physician. Id. Subsequent to his appointment with plaintiff, Hull contacted the dental clinic and spoke with North Carolina Department of Public Safety ("DPS") Dental Director James H. Clare ("Director Clare"). Id. Director Clare informed Hull that plaintiff's palate issue was a dental issue. Id. and Ex. 9.

On January 10, 2012, plaintiff was transferred from Pamlico to Craven Correctional Institution ("Craven"). Id. ¶ 18. Plaintiff did not receive any further treatment at Pamlico. Id. ¶ 18.

On February 9, 2012, a nurse at Craven responded to two sick call requests submitted by plaintiff on January 12, 2012, and February 27, 2012, in which plaintiff stated: "I got a letter from Raleigh tonight from James H. Clare the Dental Director he told us to have you set up a consultation at Central Prison with the dental staff." Id. ¶ 19, and Ex. 10. The nurse, in response, informed plaintiff that he was scheduled for an appointment with Dr. Grantham at Central Prison.[6] Id.

---

[6] Broadwell notes that he could not locate the dental record for this appointment. Broadwell Aff. ¶ 19, n. 14. Accordingly, it is unknown whether plaintiff saw Dr. Grantham at Central Prison. Id.

7

On March 27, 2012, plaintiff saw Keith Edwards ("Dr. Edwards"), DDS at Craven for evaluation of his complaints related to his palate condition. Id. ¶ 20. Upon examination, Dr. Edwards noted that plaintiff had "poor arch form" in his mouth, and as a result, denture retention was a problem. Id. and Ex. 11. Dr. Edwards referred plaintiff for an appointment, on May 7, 2012, with Dr. Glenn E. Minsley ("Dr. Minsley"), DMD at the University of North Carolina Hospital Dental Clinic. Id.

On May 7, 2012, plaintiff attended his dental appointment at the UNC Hospital Dental Clinic. Id. ¶ 21 and Ex. 12. At that appointment, a preliminary impression was taken of plaintiff's mouth for a new obturator. Id. A follow-up appointment was then scheduled for plaintiff on June 4, 2012, for final impressions, but the appointment was not kept. Id. An appointment for the final impression was re-scheduled for August 28, 2012. Id.

On September 5, 2012, plaintiff attended an appointment with the UNC Hospital Dental Clinic for continuing treatment related to his maxillary obturator. Id. ¶ 22 and Ex. 13. At that visit, Matthew Kryili, DDS ("Dr. Kryili") inserted a custom tray to plaintiff's mouth and adjusted it as needed. Id. Plaintiff was scheduled for a follow-up appointment at the UNC Hospital Dental Clinic on October 10, 2012. Id. Plaintiff attended his follow-up appointment on October 10, 2012. Id.

On October 17, 2012, plaintiff presented to the medical clinic at Warren Correctional Institution ("Warren") complaining of fluid drainage from his right eye and right ear. Id. ¶ 25 and Ex. 14. Plaintiff also complained that food was getting stuck in a hole in the roof of his mouth. Id. Plaintiff was diagnosed as suffering from an upper respiratory infection and plaintiff was treated with medication. Id. A follow-up appointment was scheduled. Id.

On October 30, 2012, plaintiff attended his follow-up appointment at Warren. Id. During his appointment, plaintiff complained that food particles were going through the hole in his nose and that he had not received his medication. Id. An order was entered for plaintiff to receive Amoxicillin and Claritin. Id. A follow-up appointment was scheduled. Id.

Plaintiff attended an appointment at the UNC Hospital Dental Clinic on November 19, 2012, and was seen by Dr. Kryili for "maxillary obturator complete denture maxilla-mandibular records." Id. ¶ 27 and Exs 14, 15. During the appointment, Dr. Kryili adjusted the maxillary rim for "lip length, lip support, fox plane, interpupillary line, ala-tragus, proper phonetics, and proper vertical dimension." Id. Shade and tooth molds also were selected. Id. A follow-up appointment was scheduled for November 27, 2012. Id.

On January 7, 2013, plaintiff was transported to the UNC Hospital Dental Clinic, but was not seen because the clinic did not have the proper equipment to perform the procedure that was scheduled for his appointment. Id. ¶ 28, and Ex. 16. Plaintiff's appointment was rescheduled for January 28, 2013. Id.

On January 28, 2013, plaintiff was returned to the UNC Hospital Dental Clinic, and was seen by Dr. Minsley for a "wax try-in" of the obturator. Id. ¶ 29. Plaintiff was scheduled for a follow-up appointment on February 11, 2013, for insertion/delivery of the maxillary obturator. Id. and Ex. 17.

On February 11, 2013, plaintiff returned to the UNC Hospital Dental Clinic and was seen by dental resident Courtney Thompson, DDS ("Dr. Thompson"). Id. ¶ 30 and Ex. 17. During the appointment, Dr. Thompson noted that the obturator was slightly loose and, therefore, plaintiff would need to use a powder denture adhesive to secure the obturator. Id. Plaintiff was instructed to follow-up as needed. Id.

9

At some point, plaintiff was transferred to Caledonia Correctional Institution. See id. ¶ 31. On February 15, 2013, Anzell Davis, DDS ("Dr. Davis") ordered that plaintiff receive one container of powder denture adhesive. Id. Plaintiff subsequently complained about the adhesive he was using, and requested that he be sent back to the UNC Hospital Dental Clinic for treatment. Id. ¶ 32 and Ex. 19. Dr. Davis referred plaintiff to the UNC Hospital Dental Clinic. Id.

On March 4, 2013, plaintiff returned to the UNC Hospital Dental Clinic and was seen by Dr. Thompson. Id. ¶ 33 and Ex. 20. At that appointment, Dr. Thompson discussed with plaintiff the possibility of placing implants for obturator retention. Id.

On March 20, 2013, plaintiff attended an appointment with Director Clare for evaluation regarding his complaints that his maxillary obturator did not stay in place. Id. ¶ 34 and Ex. 21. At that appointment, plaintiff advised Director Clare that he no longer wore the maxillary obturator because it would not "stay in." Id. Director Clare observed plaintiff apply the powder adhesive to the obturator and noted that he used a minimal amount. Id.

On April 2, 2013, Dr. Davis submitted a utilization review request for a referral to Glenn J. Reside, DMD and George H. Blakey, DDS, at UNC Oral/Maxillofacial Surgery for evaluation of plaintiff's obturator, maxilla, and sinuses. Id. ¶ 35 and Ex. 22. The utilization review request was approved the same day. Id.

## DISCUSSION

A.  Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden

10

of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

B.  Analysis

   1.  Deliberate Indifference to Medical Need

Broadwell asserts the defense of qualified immunity. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

The court first determines whether Broadwell violated plaintiff's constitutional rights. To state a claim for relief under the Eighth Amendment of the United States Constitution, a plaintiff must establish that a prison official was deliberately indifferent to a serious condition, medical need, or risk of harm. See Short v. Smoot, 436 F.3d 422, 427 (4th Cir. 2006). "In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.' " Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting

11

Williams v. Griffin, 952 F.2d 820, 824 (4th Cir. 1991)). The Supreme Court has explained that the first prong is an objective one–the prisoner must show that "the deprivation of [a] basic human need was objectively 'sufficiently serious' "–and the second prong is subjective–the prisoner must show that "subjectively 'the officials act[ed] with a sufficiently culpable state of mind.' " See Strickler, 989 F.2d at 1379 (quotations omitted).

In this case, the court will assume that plaintiff's dental condition constitutes a serious medical need. The court now considers the second prong of the Eighth Amendment test–whether defendants acted with deliberate indifference. In order to establish deliberate indifference a plaintiff must establish that "the defendants actually knew of and disregarded a substantial risk of serious injury . . . or that they actually knew of and ignored a . . . serious need for medical care." Young v. City of Mt. Ranier, 238 F.3d 567, 575 (4th Cir. 2001). The deliberate indifference standard is not satisfied by "a showing of mere negligence." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999).

The evidence in the record reflects that from the date plaintiff was transferred to Pamlico through January 25, 2011, plaintiff's dental treatment was provided by Wallace. Broadwell Aff. ¶ 5. Moreover, the record reflects that, in accordance with DPS policy and procedure, Broadwell was responsible for providing inmates with medical, and not dental, care. Broadwell Supp. Aff. ¶¶ 2, 17; DPS Health Services Policy and Procedure Manual, TZ V-6 (providing that "[d]ental services provided to inmates shall be under the direction of a duly licenced dentist.").[7] Finally, Broadwell testified in an affidavit that he never personally saw plaintiff for his palate condition, or any other dental issue. Id. ¶ 8. Plaintiff has not provided any evidence to the contrary, aside from his own conclusory allegations.

---

[7] A copy of the applicable policy also may be found at Broadwell Supp. Aff. Ex. 24, p. 1.

To the extent Wallace indicated to plaintiff on January 25, 2011, that further treatment for plaintiff's palate condition and/or a referral for treatment of his condition to an outside provider was outside of the scope of his practice as a general dentist, there is no evidence that Broadwell knew of Wallace's recommendation to plaintiff. Rather, plaintiff's medical records reflect that Wallace instructed plaintiff to raise the issue of additional care for his palate with plaintiff's primary care physician. Plaintiff, however, did not submit a sick-call request regarding his palate condition until November 30, 2011. Broadwell Aff. ¶ 14. For some reasons, the Pamlico medical staff failed to schedule plaintiff for an appointment with Broadwell, and plaintiff was transferred from Pamlico on January 10, 2012. Id. ¶¶ 15, 17.

Based upon the foregoing, there is no indication that Broadwell knew about plaintiff's dental needs and disregarded those needs. Rather, the record reflects that plaintiff was never referred to Broadwell for the treatment of his palate condition. Moreover, to the extent Broadwell made any mistakes of medical judgment, such mistakes are not actionable pursuant to § 1983. See Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975); see also, Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (citation omitted) ("Disagreements between and inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged.") Nor does any negligence on behalf of Broadwell give rise to a constitutional violation. See Grayson, 195 F.3d at 695. As a result, plaintiff has not established the subjective element of his Eighth Amendment deliberate indifference claim, and there is no constitutional violation. Thus, Broadwell is entitled to qualified immunity for plaintiff's Eighth Amendment claim, and his motion for summary judgment is GRANTED as to this claim.

13

2. Supervisor Liability[8]

Supervisors in a § 1983 action may not be held liable based upon a theory of respondeat superior. Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009); Monell v. Dep't of Social Services, 436 U.S. 658, 694 (1978). Instead, "liability ultimately is determined 'by pinpointing the persons in the decision making chain whose deliberate indifference permitted the constitutional abuses to continue unchecked.'" Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (quoting Slakan v. Porter, 737 F.2d 368, 372-73 (4th Cir. 1984)). To establish supervisor liability under § 1983, a plaintiff must establish:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff;
>
> (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and
>
> (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw, 13 F.3d at 799 (quoting Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990)).

Here, plaintiff attempts to hold Broadwell responsible for the alleged inadequate medical care. However, as indicated above, there is no evidence that Broadwell had actual or constructive knowledge that any subordinate was engaged in conduct that posed a pervasive and unreasonable risk of injury. Nor has plaintiff shown any causal link between Broadwell's alleged actions and plaintiff's alleged injury. See Slakan, 737 F.2d at 372-73. Finally, there is no evidence that

---

[8] Plaintiff raises his supervisor liability and retaliation claims in response to Broadwell's motion for summary judgment. The court, in an abundance of caution, addresses these claims.

14

Broadwell had any supervisory authority over the nursing staff at Pamlico. See Broadwell Supp. Aff. ¶ 7. Thus, the court finds that plaintiff failed to state a supervisor liability claim against Broadwell.

    3.    Retaliation

Plaintiff asserts that he was transferred from Nash to Warren on October 17, 2012, in retaliation for filing this action. To prevail on a claim of retaliation, plaintiff must demonstrate "either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). To state a claim for retaliation, an inmate must show that the alleged retaliation had an adverse impact on the exercise of his constitutional rights. Id. at 75. "In addition, [a] plaintiff must come forward with specific evidence 'establish[ing] that but for the retaliatory motive the complained of incident[s] . . . would not have occurred.'" Scott v. Kelly, 107 F. Supp. 2d 706, 709 (E.D. Va. 2000) (quoting Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995)), aff'd, 6 F. App'x 187 (4th Cir. 2001). Moreover, the Fourth Circuit has stated, in the prison context, claims of retaliation are treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." Adams, 40 F.3d at 74.

Here, plaintiff offers no evidence of a causal connection between the filing of this action and his transfer, nearly two years after filing this action. See Suarez Corp. Industries v. McGraw, 202 F.3d 676, 686 (4th Cir. 2000); Bettis v. Madison County Sheriff's Dept., No. 1:10-cv-69-RJC, 2012 WL 161250, at *6 (W.D.N.C. Jan. 19, 2012). Nor has plaintiff offered any evidence suggesting how Broadwell, a physician having almost no contact with plaintiff, was involved in his transfer. Instead, plaintiff presents nothing more than bare conclusory allegations of retaliation, which are insufficient

15

to state a constitutional claim. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (stating that a plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face."); Deleston v. Rivera, No. 6:11-2968-DNC-KFM, 2011 WL 7040906, at *2 (D.S.C. Dec. 27, 2011) (dismissing claim making only bare conclusory allegations of retaliation), aff'd, 474 F. App'x 118 (4th Cir. June 6, 2012). Thus, the court finds that plaintiff fails to state a retaliation claim.

## CONCLUSION

For the foregoing reasons, Broadwell's motion for summary judgment (DE 65) is GRANTED.

SO ORDERED, this the 21st day of August, 2013.

_____
LOUISE W. FLANAGAN
United States District Judge