IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:10-CT-3223-FL

| | | |
|---|---|---|
| JEREMY ANTHONY JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| DR. TERRY WALLACE, DR. | ) | |
| RICHARD BROADWELL, KEITH | ) | |
| HULL, FAYE DANIELS, and | ) | |
| JAMES H. CLARE,[1] | ) | |
| | ) | |
| Defendants. | ) | |

The matter comes before the court on plaintiff's motions for summary judgment (DE 180, 181, 182). Defendant James H. Clare responded to plaintiff's motion for summary judgment, but the remaining defendants did not respond. Also before the court are defendants' motions for summary judgment (DE 186, 195). Defendants' motions were fully briefed. In this posture, the issues raised are ripe for adjudication. For the following reasons, the court grants defendants' motions for summary judgment, but denies plaintiff's motions for summary judgment.

**STATEMENT OF THE CASE**

The court has extensively detailed the procedural posture of this action in prior orders. For ease of reference, pertinent portions of the statement of the case set forth in June 23, 2014, order,

---

[1] Defendant Nurse K. Hull informed the court that his full name is Keith Hull. The Clerk of Court is DIRECTED to amend the caption in this case to reflect this change.

1

is restated here:

> On December 30, 2010, plaintiff, a state inmate, brought this action pursuant to 42 U.S.C. § 1983, against Dr. Richard Broadwell ("Broadwell") and Dr. Terry Wallace DDS ("Wallace"). Plaintiff alleges that Broadwell and Wallace acted with deliberate indifference to his medical and dental needs in violation of the Eighth Amendment to the United States Constitution, while plaintiff was incarcerated at Pamlico Correctional Institution ("Pamlico"). Plaintiff alleges that Broadwell and Wallace failed to treat a hole[, or fistula,] in his palate caused by a self-inflicted gun-shot wound which occurred on June 24, 2007. Wallace Aff. ¶ 5. Plaintiff states that the hole in his palate allows food to pass through his nasal septum, and such food, at times, gets trapped leading to decay and infection. Compl. p. 4.
>
> Subsequent to the filing of this action, the court granted the respective motions for summary judgment filed by Wallace and Broadwell, and th[o]se parties were dismissed from this action. The court, additionally, permitted plaintiff to amend his complaint to include an Eighth Amendment claim against [Nurse Supervisor Keith Hull ("Hull")].
>
> Plaintiff, thereafter, filed a motion to amend to include Pamlico Superintendent Faye Daniels ["Daniels"] as a defendant, motion to hold the action in abeyance, motion for a jury demand, motion for injunctive relief, and a motion for documents to be subpoenaed. On January 6, 2014, the court entered an order granting plaintiff's motion to amend and motion for a jury demand, but denying plaintiff's remaining motions. [The court also subsequently allowed plaintiff the opportunity to amend his complaint to include North Carolina Department of Public Safety ("DPS") Director of Dental James H. Clare ("Clare") as a defendant in this action.] . . .
>
> On March 21, 2014, the court entered an order [in which it *inter alia*,] construed plaintiff's motion for reconsideration as a motion to compel discovery. Specifically, plaintiff sought both "his medical file[] from U.N.C. School of [D]entistry from day one" and any dental treatment recommendations made by Dr. Glen Minsley, Dr. Reside, and Dr. Courtney Thompson. The court held plaintiff's motion to compel discovery in abeyance and directed defendants to respond to plaintiff's motion within ten (10) days of the court's March 21, 2014, order. Finally, the court directed that its March 21, 2014, order did not relieve defendants of their obligation to respond

2

> to plaintiff's February 19, 2014, requests for production of documents.
>
> On March 24, 2014, Faye [Daniels] and Hull responded to plaintiff's motion to compel, stating that they [were] not tardy in responding to discovery because their discovery responses were not due until April 19, 2014. Plaintiff subsequently filed a motion for a physical and metal examination.
>
> On April 25, 2014, Faye [Daniels] and Hull filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that plaintiff failed to state a claim upon which relief may be granted. Alternatively, these defendants argue that they are entitled to the affirmative defense of qualified immunity. As part of their motion to dismiss, Faye and Hull also request[ed] that the court stay discovery pending the resolution of their motion. The motion was fully briefed. Plaintiff subsequently filed a motion to amend his complaint, which was fully briefed. Plaintiff then filed a motion to appoint an expert witness and a motion to compel.

(DE 164).

On June 23, 2014, the court entered an order granting plaintiff's motion to amend his complaint and appointed North Carolina Prisoner Legal Services ("NCPLS") for the limited purpose of assisting plaintiff with filing his amended complaint. The court also granted plaintiff's motions to compel and directed defendants to provide the requested discovery materials to both plaintiff and NCPLS. The court denied as moot the motions to dismiss filed by defendants Daniels and Hull. Finally, the court denied plaintiff's motion for a physical and mental examination and motion to appointment an expert witness.

On July 23, 2014, plaintiff, through NCPLS, filed his amended complaint. Plaintiff subsequently filed three separate motions for summary judgement against defendants Clare, Daniels, and Hull, respectively. Defendant Clare responded to plaintiff's motion, but the remaining defendants did not respond.

3

Defendants Daniels and Hull, as well as, defendant Clare subsequently filed respective motions for summary judgment. In both motions, defendants argue that plaintiff is unable to establish a constitutional violation. Alternatively, each defendant raises the affirmative defense of qualified immunity. The motions were fully briefed.

**STATEMENT OF UNDISPUTED FACTS**

The undisputed facts are as follows.[2] On June 24, 2007, plaintiff sustained a self-inflicted gunshot wound that resulted in multiple facial fractures and other injuries. (Wallace Aff. ¶ 5; Am. Compl. (DE 169) ¶ 11.) More specifically, plaintiff's right lateral orbital wall was obliterated, he sustained a fracture to the right zygomatic, a maxillary fracture, and a fracture of the right paranasal sinus. (Id.) Plaintiff subsequently had several surgeries at Pitt County Memorial Hospital to repair his maxillary sinus cavity to prevent food from passing from his mouth into his sinus cavity. (Id.; Am. Compl. (DE 169) ¶ 13.) Plaintiff's treating physicians at Pitt County Memorial Hospital recommended that plaintiff be fitted with an obturator device.[3] (Id. ¶ 14.)

On December 10, 2007, staff employees at Craven Correctional Institution (where plaintiff was then housed) submitted a utilization review ("UR") request to defendant Clare's office seeking approval to have plaintiff evaluated at the University of North Carolina ("UNC") at Chapel Hill School of Dentistry for possible construction of a palatal obturator/denture. (Clare Aff. ¶ 5 and Ex. A.) Clare approved the UR request on January 24, 2008. (Id.)

---

[2] The court notes that detailed accounts of the treatment provided by previously dismissed defendants Wallace and Broadwell may be found in the court's August 22, 2012, (for Wallace) and August 21, 2013, (for Broadwell) orders. See (DE 39, 93.)

[3] An obturator device is a prosthetic device that occludes an opening in the palate. (Am. Compl. (DE 169) ¶4.)

4

On February 11, 2008, plaintiff attended an appointment with Dr. Glen Minsley, a prosthodontist at UNC. (Id. ¶ 6.) Dr. Minsley recommended that an obturator/denture be fabricated to close the fistula between plaintiff's oral cavity and sinus cavity. (Id.) Dr. L.D. Nagel subsequently fabricated an obturator/denture within the prison system for plaintiff, and delivered it to plaintiff on May 19, 2008. (Id. ¶ 7.)

On January 21, 2010, plaintiff was transferred from Johnston Correctional Institution to Pamlico Correctional Institution ("Pamlico"). (Smith Aff. ¶ 4.) On February 3, 2010, plaintiff submitted a sick call request to defendant Hull, who was employed as a nurse supervisor at Pamlico during the relevant time period and provided both triage and clinical services in response to inmate sick call requests. (Hull Aff. ¶¶ 2, 3, 6 and Ex. A.) Plaintiff, in his February 3, 2010, sick call request, informed Pamlico medical staff that there was a large hole in the side of his tooth that was causing constant pain. (Broadwell Aff. ¶ 11 and Ex. H.) In response, Hull examined plaintiff on February 8, 2010, and referred plaintiff to the dental clinic. (Hull Aff. Ex. A.) Plaintiff was seen for his dental issue on February 23, 2010. (Broadwell Aff. ¶ 11 and Ex. H.)

On May 18, 2010, plaintiff submitted a sick call request stating that he needed the top plate for his mouth fixed and that it was causing him pain. (Hull Aff. ¶ 7 and Ex. B.) Defendant Hull examined plaintiff and referred him to the dental clinic. (Id.)

From June 8, 2010, through January 25, 2011, plaintiff saw defendant Wallace, a dentist, for dental treatment on a regular basis. (Wallace Aff. Ex. 1, pp. 9-10.) While plaintiff was under Wallace's care, plaintiff submitted sick call requests at Pamlico on July 28, 2010, August 6, 2010, August 23, 2010, September 7, 2010, September 26, 2010, October 12, 2010, November 15, 2010, and December 1, 2010. (Hull Aff. ¶¶ 8-15.) Plaintiff did not show up for his sick call appointments

5

following his July 28, 2010, and August 6, 2010, sick call requests. (Id. Exs. C, D.) In response to his August 23, 2010, sick call request, defendant Hull advised plaintiff that there was a backlog of inmates waiting for dental appointments. (Id. Ex. E.) Defendant Hull referred plaintiff to the dental clinic in response to plaintiff's remaining sick call requests. (Id. F, G, H, I, J.)

On November 1, 2010, plaintiff sent a letter to defendant Daniels complaining about his dental issues and stating he had a tooth that needed to be pulled. (Daniels Aff. ¶ 6 and Ex. B.) On November 2, 2010, Assistant Superintendent for Programs, Anthony Florence, responded to plaintiff's letter, on behalf of defendant Daniels, and advised plaintiff that his dental concerns were being treated by defendant Wallace within the scope of protocol in accordance with DPS policy. (Id.) Plaintiff sent a second letter to defendant Daniels on December 26, 2010, in which plaintiff again complained about his dental treatment and the fact that he had not received the proper implants. (Id. ¶ 7 and Ex. C; ((DE) 111) Attach. 1.) Defendant Daniels responded, and advised plaintiff that plaintiff was seen by Pamlico's dental triage a total of 10 times during 2010, including two no-show appointments, and that plaintiff was seen by Craven's dental clinic seven times in 2010. (Id.) Defendant Daniels also advised plaintiff that plaintiff's dental treatment must be performed at Craven because Pamlico did not have a dentist on staff. (Id.)

On January 25, 2011, plaintiff attended his final appointment with Wallace in the dental clinic. (Broadwell Aff. ¶ 32 and Ex. BB.) Wallace noted in plaintiff's medical records that plaintiff still was having difficulty with his obturator staying in place and that plaintiff would need other assistance for further treatment options. (Id.)

On March 29, 2011, plaintiff sent a letter to defendant Daniels complaining that he was taken to the dentist at Craven on two occasions, but was not seen because plaintiff had not submitted sick

6

call requests. (Daniels Aff. ¶ 8 and Ex. D.) Correctional Captain Barney Owens provided the following response:

> I contacted medical and reviewed your sick call requests that you put in requesting to go to dental. Some of your appointments were for follow up appointments resulting from dental related to sea bond dental adhesive that you claim was not working. Some appointments were backlog from last year. You must k[eep] in mind there are a large number of inmates that request to go to dental which []create[s] a backlog.

(Id.)

On November 24, 2011, plaintiff submitted a sick call request complaining that he needed his mouth fixed because food was entering a hole in the roof of his mouth. (Hull Aff. ¶ 16 and Ex. K.) Plaintiff explained in his request that Wallace provided a "paper" to the court indicating that he was unable to fix plaintiff's palate and that plaintiff would need to be seen by a specialist. (Id.)

Also on November 24, 2011, plaintiff sent a letter to defendant Daniels complaining that his dental problems were not being addressed and stating that defendant Wallace informed plaintiff that he could not fix plaintiff's mouth. (Daniels Aff. ¶ 9 and Ex. E.) Daniels provided the following response which states in pertinent part:

> Upon investigation, medical advises you will need to access dental triage here at Pamlico in order to be back logged to see Craven CI dental. The Dentist at Craven is the only person who can refer you to an oral surgeon to address your specific problems. . . . Based on this information, I encourage you to submit a dental triage request as soon as possible.

(Id.)

On December 13, 2011, plaintiff was seen by defendant Hull in response to a December 7, 2011, sick-call request in which plaintiff complained, *inter alia*, that the top of his mouth was in pain and stating he needed to see a specialist. (Hull Aff. ¶ 17 and Ex. L.) Plaintiff also informed Hull that a nurse had advised him a doctor would see him that week, but that plaintiff had not seen a

7

doctor. (Id.) Upon examining plaintiff, Hull noted plaintiff complained that food caused his palate to become irritated and bleed. (Id.) Plaintiff, at that time, told Hull that the dental clinic advised plaintiff his condition would need to be referred back to the camp physician for further evaluation and treatment. (Id.) After examining plaintiff, Hull referred plaintiff to the camp physician for pain evaluation. (Id.) Hull further instructed plaintiff to bring the pertinent dental information to the medical clinic to allow the camp physician to review it. (Id.) No appointment was scheduled for plaintiff to be seen in the medical clinic. (Id. Ex. M.)

Plaintiff subsequently sent a letter, dated December 16, 2011, to the Secretary of DPS, which the Secretary forwarded to defendant Clare. (Clare Aff. ¶ 8.) In that letter, plaintiff indicated that the obturator/denture which had been fabricated for him in the prison system was not adequately occluding the fistula. (Id. and Ex. B.) In response, Clare informed plaintiff that he recommended plaintiff have a consultation with Central Prison dental staff and instructed plaintiff to submit a sick call request to schedule the consultation. (Id. ¶ 9 and Ex. C.)

On January 4, 2012, defendant Hull saw plaintiff in response to plaintiff's inquiry as to when he would see a dentist. (Smith Aff. ¶ 9 and Attach. I, p. 283.) Hull noted on plaintiff's sick call request that Hull contacted the dental clinic and spoke with defendant Clare. Id. Defendant Clare informed Hull that plaintiff's palate issue was a dental issue. Id. and Ex. 9. On January 10, 2012, plaintiff was transferred from Pamlico to Craven Correctional Institution ("Craven"). (Id. ¶ 4.)

Following plaintiff's written exchange with defendant Clare, plaintiff was evaluated by two dentists (including an oral surgeon) at the Central Prison dental clinic on March 5, 2012. (Clare Aff. Ex. D.) Central Prison medical staff subsequently submitted a UR request, dated March 29, 2012,

8

seeking approval for plaintiff to be re-evaluated at the UNC School of Dentistry. (Id. ¶ 10 and Ex. E.) Clare approved the UR request on April 9, 2012. (Id.)

On May 7, 2012, plaintiff attended an appointment with Dr. Minsley at the UNC School of Dentistry. (Id. ¶ 11 and Ex. F.) Dr. Minsley initially discussed with plaintiff trying to improve his existing obturator. (Id. Ex. F. p. 7.) At plaintiff's next appointment in September, Dr. Minsley took impressions for a new upper denture/obturator. (Id. p. 6.) After a few follow up visits with plaintiff, the dentists at the UNC School of Dentistry delivered plaintiff's new obturator/denture to him on February 11, 2013. (Id. p. 2.)

On March 20, 2013, defendant Clare visited Caledonia Correctional Institution ("Caledonia"), where plaintiff was incarcerated, for matters unrelated to plaintiff. (Id. ¶ 12.) While at Caledonia, defendant Clare personally examined plaintiff. (Id. and Ex. G.) Plaintiff expressed dissatisfaction with the fit and function of his new obturator, and informed defendant Clare that he was not wearing the obturator at all. (Id.) Defendant Clare assessed that plaintiff was applying too little adhesive to the obturator to be effective, and recommended that plaintiff apply adhesive more liberally to assist with retention. (Id.)

After examining plaintiff on March 20, 2013, defendant Clare spoke with Dr. Minsley at the UNC School of Dentistry regarding other potential options for plaintiff, including the possibility of dental implants to support and retain a denture/obturator. (Id. ¶ 13 and Ex. H.) Defendant Clare then instructed Caledonia dental staff to initiate a UR request. (Id.) The UR request was entered and approved on April 2, 2013. (Id.)

On May 20, 2013, Dr. Glen Reside, an oral surgeon at the UNC School of Dentistry, evaluated plaintiff and noted that plaintiff's obturator was not stable and fell out despite the use of

9

adhesives. (Id. ¶ 14 and Ex. I.) Dr. Reside further noted that plaintiff's oral hygiene around his mandibular (lower) teeth was not good and recommended that plaintiff undergo a computed tomography ("CT") scan for definitive evaluation for the possibility of maxillary (upper) implants to be used to retain an upper denture/obturator. (Id.) Dr. Reside noted the need for excellent oral hygiene around any implant fixtures. (Id.) On May 29, 2013, defendant Clare approved a UR request for the CT scan, and the CT scan was conducted on July 19, 2013. (Id. ¶ 15 and Ex. J.)

Defendant Clare received the results of the CT scan on September 3, 2013. (Id. ¶ 16 and Ex. K.) The CT scan results included a cost estimate of $6,000 for three maxillary (upper) implants. (Id.) Defendant Clare then forwarded the results to Dr. Minsley and asked Dr. Minsley if he felt that the implant route was medically necessary. (Id. ¶ 17 and Ex. K.)

Dr. Minsley responded to defendant Clare's inquiry on November 4, 2013, and indicated that the implants were medically necessary for plaintiff. (Id. ¶ 18 and Ex. L.) Defendant Clare then wrote plaintiff a letter, dated November 21, 2013, advising plaintiff that, as noted by Dr. Reside, poor oral hygiene increases the risk of implant failure and that defendant Clare would approve the recommended implant treatment plan on the condition that plaintiff demonstrate an ability to maintain excellent oral hygiene. (Id. Ex. M; Pl.'s Resp. Attach. p. 1.) Defendant Clare then made arrangements to have plaintiff transferred to Nash Correctional Institution ("Nash"), a facility which could provide plaintiff better oral hygiene care, so that plaintiff could undergo periodic oral hygiene evaluations and so that plaintiff would be closer to the UNC School of Dentistry. (Id. ¶ 20.)

Plaintiff had his first oral hygiene evaluation at Nash on December 17, 2013. (Id. ¶ 21 and Ex. N.) Plaintiff's oral hygiene evaluation revealed a plaque score of 80 (on a scale of 100). (Id.) Plaintiff had follow up hygiene visits at Nash on January 7, 2014, January 14, 2014, and January 23,

2014, and on each of those occasions, plaintiff had a plaque score of 20. (Id.) In response to plaintiff's improved oral hygiene, defendant Clare emailed Dr. Minsley and the Nash dentist instructing them to proceed with setting up an appointment for plaintiff's implant placement. (Id. ¶ 22 and Ex. O.) Defendant Clare followed-up with Dr. Minsley about setting up plaintiff's implant placement appointment on February 20, 2014. (Id.) Dr. Minsley responded that he had been busy, but that he would follow-up on the scheduling of plaintiff's appointment. (Id.) Defendant Clare contacted Dr. Minsley about plaintiff's implant placement appointment a second time on March 19, 2014. (Id.) UNC then scheduled plaintiff's implant placement appointment for May 16, 2014, and defendant Clare approved a UR request for plaintiff to return to the UNC School of Dentistry for maxillary (upper) implant placement. (Id. ¶ 23 and Ex. P.) On July 31, 2014, plaintiff had dental implant surgery placement at the UNC School of Dentistry. (Id. ¶ 24.)

## DISCUSSION

A.    Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

11

B.  Analysis

Plaintiff asserts that defendants acted with deliberate indifference to his medical and dental needs in violation of the Eighth Amendment. Defendants assert the defense of qualified immunity. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009). The court first determines whether defendants violated plaintiff's Eighth Amendment rights.

1.  Defendants Hull and Clare

To state a claim for relief under the Eighth Amendment of the United States Constitution, a plaintiff must establish that a prison official was deliberately indifferent to a serious condition, medical need, or risk of harm. See Short v. Smoot, 436 F.3d 422, 427 (4th Cir. 2006). "In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (internal quotation omitted)). The first prong is an objective one–the prisoner must show that "the deprivation of [a] basic human need was *objectively* sufficiently serious"–and the second prong is subjective–the prisoner must show that "*subjectively* the officials act[ed] with a sufficiently culpable state of mind." See id. at 1379 (quotations omitted).

12

In this case, the court assumes that plaintiff's dental condition constitutes a serious medical need. The court now considers the second prong of the Eighth Amendment test–whether defendants Clare and Hull acted with deliberate indifference. Deliberate indifference "sets a particularly high bar to recovery." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). "[D]eliberate indifference entails something more than negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." See Farmer v. Brennan, 511 U.S. 825, 835 (1994). It requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm. Id. at 837; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995). Consequently, negligence or medical malpractice is insufficient to establish deliberate indifference; instead, the treating official must entirely fail to consider the inmate's medical complaints or intentionally delay or deny access to adequate medical care. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Sosebee v. Murphy, 797 F.2d 179, 181 (4th Cir. 1986). Mere disagreement with the course of treatment provided by treating officials also falls short of a valid claim. Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir.1975).

The court begins with plaintiff's Eighth Amendment claim against defendant Hull. Plaintiff's claim against Hull is limited to the time frame plaintiff was incarcerated at Pamlico – January 21, 2010 through January 10, 2012. The record reflects that Hull saw plaintiff on several occasions in response to plaintiff's sick call requests. (Smith Aff. ¶ 8.) The record further reflects that Hull referred plaintiff to the dental clinic on several occasions and informed plaintiff that there was a "back log list" to see the dentist. (Hull Aff. Ex. E.) Finally, the record reflects that plaintiff regularly attended dental appointments with Wallace from June 8, 2010, through January 25, 2011. (Wallace Aff. Ex. 1, pp. 9-10.) Based upon the foregoing, the record reflects that defendant Hull

13

was responsive to plaintiff's medical complaints, and that any delay in plaintiff obtaining a dental appointment was due to a high demand for dental services, which, at most, constitutes negligence and is not actionable pursuant to § 1983. See White v. Morris, No. 95-6066, 1995 WL 168801, at *1 (4th Cir. 1995) (finding no deliberate indifference where delay in obtaining medical attention for an inmate's loose fitting denture was due, in part, to a busy office schedule.); see also, Wallop v. Buck, No. PWG, 13-2355, 2014 WL 4749242, at * (D. Md. Sept. 22, 2014) (finding that although the frequency and scope of the medical care provided for plaintiff's jaw injury over a span of nearly two years were "less than ideal" but did not amount to deliberate indifference); Williams v. Bartee, No. CCB–10–935, 2011 WL 2842367, at *4 (D. Md. July 14, 2011) (finding no constitutional violation where two-and-a-half month delay in dental treatment did not result in serious consequence to plaintiff's overall dental health and that "a certain amount of delay in providing appointments for dental care in a large pre-trial detention center are not unexpected"), aff'd, 469 F. App'x 270 (4th Cir. 2012).

Plaintiff's contention that defendant Hull violated his constitutional rights by refusing to refer plaintiff to a specialist for palate restoration and additional treatment, despite knowing that plaintiff required such care, also is meritless. In particular, defendant Hull, a nurse, did not have the authority to refer plaintiff to a dental specialist because such a referral could only be made by a dentist. (Smith Aff. ¶¶ 12, 22.) The evidence further reflects that defendant Hull consulted with defendant Clare in early January 2012, regarding plaintiff's palate issue, and Clare informed Hull that the issue was a dental issue. (Smith Aff. ¶ 9 and Attach. I, p. 283.) The evidence further reflects that Clare was assisting plaintiff with plaintiff's dental concerns at that time. (Smith Aff. ¶ 9 and Attach. I, p. 283.) Hull was not in a position to interfere or alter Clare's course of treatment

14

and was entitled to rely on Clare's prescribed course of treatment. See Shakka, 71 F.3d at 167; see also, Shipley v. Department of Justice Bureau of Prisons, No. 5:10-CT-3153-FL, 2012 WL 3887096, at *5 (E.D.N.C. Sept. 7, 2012) ("As a nurse, Daniel was entitled to rely on a doctor's medical judgment as to the appropriate course of treatment for a patient's conditions and cannot override the doctor's orders.") (internal quotation and citation omitted). Moreover, there is no evidence that defendant Hull knew of and disregard any objectively serious condition, medical need, or risk of harm.[4] Rather, plaintiff, at most, expresses disagreement with the care defendant Hull provided, which is insufficient to establish a constitutional violation. See Russell, 528 F.2d 318-19 (stating that an inmate's disagreement with the course of treatment provided by medical officers will not support an Eighth Amendment claim). Based upon the foregoing, plaintiff has not established the subjective element of his Eighth Amendment deliberate indifference claim against Hull, and cannot establish a constitutional violation. Because plaintiff cannot establish a constitutional violation, defendant Hull is entitled to qualified immunity. Thus, defendant Hull's motion for summary judgment is GRANTED, and plaintiff's motion for summary judgment is DENIED.

The court now turns to plaintiff's Eighth Amendment claim against defendant Clare. Plaintiff alleges that defendant Clare was "dangerously delinquent in ensuring that plaintiff gets the adequate medical care for his condition." (Am. Compl. (DE 169) ¶48). In his role as DPS's Dental Director, defendant Clare was responsible for approving UR requests for medically necessary dental treatment that was not available within the prison system. (Clare Aff. ¶ 4.) The record reflects that once defendant Clare received plaintiff's December 16, 2011, letter, defendant Clare repeatedly

---

[4] The court notes that the fact that plaintiff was not referred to a medical provider on one or two occasions, at most, constitutes negligence, which is not actionable pursuant to § 1983. See Estelle, 429 U.S. at 105-106.

approved UR requests that plaintiff be seen, evaluated and treated by dental specialists at the UNC Dental School on multiple occasions. The record further reflects that defendant Clare took a proactive role in assisting plaintiff with his condition in that defendant Clare personally examined plaintiff and repeatedly followed-up with the UNC School of Dentistry to schedule appropriate appointments.

To the extent plaintiff alleges that defendant Clare intentionally delayed plaintiff's treatment, such claim is unsubstantiated. Here, plaintiff cites the Seventh Circuit Court of Appeals' decision in Greeno v. Daley, 414 F.3d 645 (7th Cir. 2005), in support of his argument that Clare violated his constitutional rights by persisting with treatment that Clare knew was ineffective in an attempt to delay or prolong plaintiff's treatment. In Greeno, the Seventh Circuit held that the fact that the plaintiff received some treatment in response to his persistent complaints of vomiting and heartburn was not dispositive of his Eighth Amendment claim. Id. at 654. Rather, the court in Greeno found that the defendants' "obdurate refusal" to alter the plaintiff's course of treatment, despite the plaintiff's repeated complaints that the medication was not working and that his condition was getting worse, raised a genuine issue of material fact with regard to whether the defendants acted with deliberate indifference. Id.

This action, however, is distinguishable from Greeno in that plaintiff's medical records reveal that defendant Clare did not exhibit an "obdurate refusal" to alter his course of treatment despite plaintiff's complaints. Rather, the record reflects plaintiff suffered from a complicated condition which plaintiff concedes required multiple appointments for diagnosis and evaluation of the various prescribed medical devices. (Am. Compl. (DE 169) ¶49.) The record further reflects that the many medical and dental professionals that saw plaintiff attempted various methods of

16

treating plaintiff's condition, including two sets of dentures, alterations in the dentures, and dental implants. Thus, the Seventh Circuit's reasoning in Greeno is inapplicable in this case.

Finally, there is no indication in the record that defendant Clare acted with the very purpose of causing harm or with knowledge that harm would result. See Wilson v. Coleman, No. 7:09CV00325, 2009 WL 3055268, at *5 (W.D. Va. Sept. 24, 2009) (holding no deliberate indifference existed where, in the opinion of a medical professional, plaintiff did not require emergent dental care for deteriorated fillings and bleeding gums), aff'd, 395 F. App'x 41 (4th Cir. 2010). Rather, the record reflects that defendant Clare diligently acted to assist plaintiff with a complex dental condition. As stated, plaintiff's disagreement with defendant Clare's provision of care is not actionable pursuant to § 1983. See Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (citation omitted) ("Disagreements between and inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged.") Nor does any negligence on behalf of Clare, or any other defendant, give rise to a constitutional violation. See Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999). As a result, plaintiff has not established the subjective element of his Eighth Amendment deliberate indifference claim, and there is no constitutional violation. Because there is no constitutional violation, defendant Clare is entitled to qualified immunity for plaintiff's Eighth Amendment claim. Thus, defendant Clare's motion for summary judgment is GRANTED, and plaintiff's motion for summary judgment is DENIED.

2. Defendant Daniels

Plaintiff alleges that defendant Daniels acted with deliberate indifference to plaintiff's dental needs because she failed to take action on plaintiff's letters complaining about his condition and, instead, referred the letters back to defendant Hull. Supervisors in a § 1983 action may not be held

17

Case 5:10-ct-03223-FL   Document 209   Filed 03/25/15   Page 17 of 20

liable based upon a theory of *respondeat superior*. Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009); Monell v. Dep't of Social Services, 436 U.S. 658, 694 (1978). Instead, "liability ultimately is determined 'by pinpointing the persons in the decision making chain whose deliberate indifference permitted the constitutional abuses to continue unchecked.' " Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (quoting Slakan v. Porter, 737 F.2d 368, 372-73 (4th Cir. 1984)). To establish supervisor liability under § 1983, a plaintiff must establish:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff;
>
> (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and
>
> (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw, 13 F.3d at 799.

Here, the evidence in the record reflects that plaintiff sent letters to Daniels regarding his dental care, and that Daniels investigated and responded to plaintiff's letters. (Daniel's Aff. Exs. B-E.) Moreover, as was done in this case, prison officials are entitled to rely on medical judgments and expertise of prison physicians and medical personnel concerning the course of treatment deemed necessary for prisoners. See Shakka, 71 F.3d at 167 (citation omitted); Meloy v. Bachmeier, 302 F.3d 845, 849 (8th Cir. 2002) ("Prison officials cannot substitute their judgment for a medical professional's prescription.").

Additionally, there is no evidence that Daniels had actual or constructive knowledge that any subordinate was engaged in conduct that posed a pervasive and unreasonable risk of injury. Nor has

18

plaintiff shown any causal link between defendant Daniels' alleged actions and plaintiff's alleged injury. See Slakan, 737 F.2d at 372-73. Plaintiff, further, has not presented any evidence to show that Daniels' response to plaintiff's complaints was so inadequate to demonstrate deliberate indifference. See (Daniels Aff. ¶ 4 and Exs. B-E.) Rather, at most, the record reflects a disagreement as to plaintiff's medical treatment, which is not sufficient to establish a constitutional violation. See Wright, 766 F.2d at 849. Based upon the foregoing, the court finds no constitutional violation, and that Daniels is entitled to qualified immunity. As a result, defendant Daniel's motion for summary judgment is GRANTED, and plaintiff's motion for summary judgment is DENIED.

3. Supplemental Jurisdiction

To the extent plaintiff alleges any negligence-related state law claims, the court declines to exercise jurisdiction over such claims. A district court may decline to exercise supplemental jurisdiction over a claim if the district court dismisses all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3); see Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995); see also, Gantt v. Whitaker, 203 F. Supp.2d 503, 512 (M.D.N.C. Feb. 26, 2002) (declining to exercise supplemental jurisdiction over plaintiff's state law claims including those again the sheriff's official bond), aff'd, 57 F. App'x 141 (4th Cir. 2003) . The court has dismissed plaintiff's § 1983 claims, which were the sole claims over which it had original jurisdiction. In the interest of judicial economy, fairness, and comity, the court will not exercise supplemental jurisdiction over plaintiff's state law negligence claims. Thus, plaintiff's state law negligence claims are dismissed without prejudice.[5]

---

[5] Pursuant to 28 U.S.C. § 1367(d), the state statute of limitations period shall be tolled for a period of at least thirty (30) days after dismissal. Estate of Manook v. Research Triangle Institute, Intern, No. 5:10-CV-72-D, 5:10-CV-73-D, 2010 WL 3199874, at *5 (E.D.N.C. Aug. 12, 2010); Coleman v. Smith, No. 3:08-3675-JFA, 2010 WL 569662 at *4 n.3 (D.S.C. Feb. 11, 2010); Futick v. Mills, No. 4:08-1749-CMC-TER, 2008 WL 5378266, at *1 (D.S.C. Dec. 24,

19

## CONCLUSION

For the foregoing reasons, defendants' motions for summary judgment (DE 186, 195) are GRANTED, and plaintiff's motions for summary judgment (DE 180, 181, 182) are DENIED. The Clerk of Court is DIRECTED to amend the court's caption to reflect defendant Hull's full name. The Clerk also is DIRECTED to close this case.

SO ORDERED, this the 24th day of March, 2015.

LOUISE W. FLANAGAN
United States District Judge

---

2008); but see, Katema v. Midwest Stamping Co., 180 F. App'x 427, 428 (4th Cir. 2006) (finding that the district court abused its discretion in declining to exercise its supplemental jurisdiction under § 1367 because plaintiff's state law claims would be time-barred in state court and because the court had diversity jurisdiction over plaintiff's claim).